IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KAREN LEE MACCREADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20CV1177 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Karen Lee MacCready ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on May 31, 2017, alleging a disability onset date of April 28, 2017. (Tr. at 11, 209-15.)[2] Her claim was denied initially (Tr. at 93-106, 125-33), and that determination was upheld on reconsideration (Tr. at 107-20, 137-44).

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #11].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 145-46.) At the subsequent hearing on March 11, 2020, both Plaintiff and an impartial vocational expert appeared and testified, and Plaintiff was represented by an attorney. (Tr. at 11.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 25), and, on October 28, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date of April 28, 2017. Plaintiff therefore met her burden at step one of the sequential evaluation process. (Tr. at 13.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease; tarsal tunnel syndrome; hallux valgus; degenerative changes in the feet; asthma; chronic inflammatory response syndrome; cataracts; optic nerve atrophy in left eye; and obesity[.]

(Tr. at 13.) The ALJ next found at step three that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing. (Tr. at 14-17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, through her date last insured, Plaintiff had the RFC to perform "a reduced range of light work," further described as follows:

> [Plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for 8 hours in an 8 hour workday, stand and walk for 2

5

hours in an 8-hour workday, with standing limited to no more than 20 minutes
at a time, and walking limited to no more than 10 minutes at a time, with sitting
at least 5 minutes between periods of standing or walking. She can never climb
ladders, ropes, scaffolds or stairs, she can occasionally climb ramps, and she can
have no crouching or kneeling and have no more than occasional exposure to
extreme cold, extreme heat, wetness, and humidity. She must avoid
concentrated exposure to pulmonary irritants, including dusts, fumes, odors,
gases, and poor ventilation, she can have occasional exposure to hazardous
machinery and no exposure to unprotected heights, and she can have no
operation of foot controls or [] driving a motor vehicle as part of her work
duties.

(Tr. at 17.) At step four of the sequential analysis, the ALJ found, based on the testimony of the vocational expert, that Plaintiff's past relevant work as human resources specialist and a payroll specialist did not exceed her RFC. (Tr. at 24.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now contends that "[t]he ALJ materially failed to obtain adequate guidance from an opining professional in light of her inability to reconcile favorably weighted opinions with the RFC and the particular nature of the impairments in this case." (Pl.'s Br. [Doc. # 12] at 3.) Put plainly, Plaintiff argues that the ALJ failed to ground her RFC assessment in the medical opinion evidence, and instead substituted her own interpretation of the evidence for that of medical professionals, particularly with regard to standing, walking, and sitting limitations.

Under the applicable regulations for claims filed on or after March 27, 2017,[5]

> [The ALJ] will not defer or give any specific evidentiary weight, including
> controlling weight, to any medical opinion(s) or prior administrative medical
> finding(s), including those from your medical sources. When a medical source
> provides one or more medical opinions or prior administrative medical findings,

---

[5] In 2017, the Social Security Administration revised its regulations governing the analysis of opinion evidence. Under the new regulations, for claims filed on or after March 27, 2017, decision-makers must consider the persuasiveness of each opinion as set out above. Because Plaintiff protectively filed her claim on April 28, 2017, these regulations govern in the present case.

6

we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . [and] (v) Examining relationship. . . .

(4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a) and (c). The regulations also require decision-makers to "articulate in . . . [their] decisions how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the

7

persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), 404.1520c(c)(1)-(c)(2).

In the present case, the ALJ relied on the findings of the State agency medical consultants, Drs. Frank Virgili and Eduardo Haim, that Plaintiff could perform light work and should avoid concentrated exposure to extreme heat and cold, wetness, humidity, and pulmonary irritants, including dusts, fumes, odors, gases, and poor ventilation. (Tr. at 17, 22-23, 101-03, 116-17.) The ALJ found that this conclusion was well supported by the medical evidence of record. (Tr. at 22, 23.) The ALJ nevertheless included additional limitations with regard to standing and walking to take into account "the development of [Plaintiff's] painful bilateral foot conditions." (Tr. at 22-23.) The ALJ also found that Plaintiff's foot condition warranted additional limitations based on the opinion of Jennifer Keller, DPM, Plaintiff's podiatrist. Dr. Keller posited that Plaintiff would have difficulty with balance, was an increased fall risk, and would be at risk to drive due to diminished sensation in her feet. (Tr. at 23, 817.) Accordingly, the ALJ "precluded [Plaintiff] from climbing ladders, ropes, scaffolds, or stairs[,] . . . from any exposure to unprotected heights[, and] from operating foot controls or a motor vehicle." (Tr. at 23.)

Most notably for purposes of walking, standing, and sitting limitations, the ALJ found "somewhat persuasive the July 10, 2019 assessment of James Shorten, PA, one of [Plaintiff's] treating practitioners." (Tr. at 23, 840.) PA Shorten noted that Plaintiff "was cleared for light duty with mostly seated work, with 2 hours/day standing in 20 minute increments with 5-minute breaks, and walking limited to 1 hours per day in 10 minute increments with 5 minute breaks and no lifting over 20 pounds." (Tr. at 24, 840.) The ALJ noted that "the record does

not clearly show that [Plaintiff] would remain so limited, as the restrictions were to be revisited at the next appointment," but the ALJ nevertheless acknowledged that these restrictions were "supported by the medical evidence of record at the time," and the ALJ essentially incorporated these restrictions into the RFC. (Tr. at 20, 24.)[6] The ALJ also outlined the treatment records from PA Shorten, his colleague Dr. Joseph Park, and Plaintiff's other treating providers, and noted that Plaintiff:

> has received conservative treatment consisting of injections and other medications in order to control her bilateral foot pain, and she has not required any emergency room visits for complaints regarding pain in her feet, no narcotic chronic pain management treatment, and no referrals for surgical or specialized intervention for her ongoing bilateral foot pain. Moreover, her clinical studies regarding the neuropathy in her feet were primarily normal and she has not been prescribed an assistive device for ambulation because of her foot pain or back pain.

(Tr. at 19, 20, 21.)

Plaintiff nevertheless faults the ALJ for failing to consider additional limitations based on alleged worsening of her foot impairment, given PA Shorten's indication in July 2019 that Plaintiff's restrictions would be re-evaluated at her next appointment. Plaintiff concedes that she canceled her subsequent appointment (see Tr. at 24, 838, 840), but contends that when she eventually returned to Dr. Park in February 2020, her condition had deteriorated. In particular, Plaintiff notes that Dr. Park recommended that Plaintiff resume physical therapy "for gait training, proprioception, ankle range of motion, and stretching/strengthening of the gastrocnemius muscles and Achilles' tendons." (Pl.'s Br. at 14 (citing Tr. at 937).)

---

[6] The Court notes that under the regulations applicable in this case for claims filed after March 27, 2017, a licensed Physician Assistant is an acceptable medical source. 20 CFR § 404.1502(a)(8).

However, the ALJ specifically considered Plaintiff's February 2020 visit with Dr. Park, noting that:

> In February 2020, the claimant presented to Joseph Park, M.D. for follow up evaluation of bilateral feet pain (Ex. 30F/3). Records showed she was last seen in Dr. Park's clinic 9 months prior, and she reported that the injections she received to lessen her foot pain did not provide much relief (Ex. 30F/3). She noted no significant changes in her symptoms since the last visit and she continued to have numbness in the plantar aspects of her feet (Ex. 30F/3). A review of all the claimant's systems was negative (Ex. 30F/3).

(Tr. at 19 (citing Tr. at 935).) As reflected in the treatment note cited by the ALJ, at the February 2020 appointment, Plaintiff herself reported that she had noted "no significant change in her symptoms since the last visit." (Tr. at 935.) This record, as discussed by the ALJ, supports the conclusion that no additional limitations were warranted beyond those PA Shorten had previously given in July 2019.[7]

Plaintiff also contends that the ALJ failed to properly consider evidence that, in April 2019, Plaintiff experienced decreased sensation in both feet and moderate left ankle instability, leading PA Shorten to offer Plaintiff a cane. (Pl.'s Br. at 16 (citing Tr. at 880-81).) However, Plaintiff declined a cane, and three months later, in the July 2019 assessment, PA Shorten indicated that Plaintiff was cleared for light duty work with the walking and standing restrictions set out above, which were in large part included in her RFC assessment. In short, the ALJ explained that, although the record could potentially support fewer standing and walking restrictions than those opined by Plaintiff's providers, he ultimately gave Plaintiff the

---

[7] As noted by Defendant in the briefing, the record reflects that the next month, in March 2020, Plaintiff called Dr. Park's office stating she had a disability hearing that day "and would like to know does her diagnosis keep her from working at all" (Tr. 935). PA Shorten wrote that there was: "Nothing in Dr. Park's note to suggest she cannot work at all. No current work note. <u>She did have a light duty work note last July 2019 but was seen in February by Dr. Park and no mention of any current work restrictions</u>." (Tr. 935 (emphasis added).) By any measure, PA Shorten's records reflects that no greater work restrictions were warranted.

benefit of the doubt by generally incorporating PA Shorten's walking and standing limitations almost verbatim.

Plaintiff's additional challenge regarding her sitting limitations is equally unpersuasive. Plaintiff reported in physical therapy appointments in mid-2019 that her pain now extended up her legs and sometimes woke her up at night. (Tr. at 687, 698, 700.) Plaintiff also cites to treatment records from Dr. Keller. (Tr. at 796, 812.) During this time, she also reported increased tingling in her feet when sitting from prolonged periods. (Tr. at 15, 19, 726.) Nevertheless, Plaintiff fails to suggest what, if any, further restrictions these symptoms warranted. Moreover, no medical providers opined that Plaintiff required sitting limitations beyond those included in the RFC, and the ALJ not only considered and included Dr. Keller's recommended limitations, but also considered the recommendations and records from Dr. Park and PA Shorten from the same time frame.

To the extent that Plaintiff contends that the ALJ "should have obtained a new consultative opinion under the authority of 20 C.F.R. § 404.1519a(b) and the reasoning of Cook, 783 F.2d at 1173" before assessing Plaintiff's abilities to sit, stand, and walk, (Pl.'s Br. at 19), the present case does not require such a step. The regulations address the circumstances under which an ALJ may order such an examination as follows:

> [An ALJ] may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [a] claim. Some examples of when [an ALJ] might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
>> (1) The additional evidence needed is not contained in the records of [the claimant's] medical sources;

11

Case 1:20-cv-01177-WO-JEP   Document 15   Filed 01/28/22   Page 11 of 13

> (2) The evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that [the ALJ] need[s] is not available from [the claimant's] treating or other medical sources; or
>
> (4) There is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established.

20 C.F.R. §§ 404.1519a(b), 416.919a(b). The Fourth Circuit has held that remand is warranted for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

Here, Plaintiff argues that a consultative examination was required, not due to a lack of evidence, but because "[t]he ALJ's analysis of the evidence was flawed." (See Pl.'s Br. at 19.) Although Plaintiff further contends that the ALJ "was not sufficiently guided in formulating an opinion" (Pl.'s Br. at 19), this case does not involve a lack of evidence, and no further consultative exam or opinion was requested by Plaintiff or her counsel at that hearing, and counsel for Plaintiff agreed that the record was complete and did not object to the addition of updated records from Dr. Park and PA Shorten. (Tr. at 11, 53-55.) Here, the ALJ relied on Plaintiff's treatment records, Plaintiff's reported activities, the opinions of the State agency physicians, the recommendations from Dr. Kelly, and the July 2019 work restrictions suggested by PA Shorten. Because, as set out above, the ALJ both considered and explained his reliance on such evidence, the Court finds no basis for finding that a further examination or evaluation was required.

12

In sum, the ALJ sufficiently explained her decision and substantial evidence supports the ALJ's determination. Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]" Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, explained the reasons for her determination, and that determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion for Judgment Reversing the Commissioner should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 28th day of January, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

13

Case 1:20-cv-01177-WO-JEP   Document 15   Filed 01/28/22   Page 13 of 13